```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

In re LUXOTTICA GROUP, S.p.A.                Present Tentative Views of Court
SECURITIES LITIGATION                        to Assist in Possible Settlement
                                             Discussions
                                             01-CV-3285
------------------------------------X
```

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ MAY 1 3 2005 ★

BROOKLYN OFFICE

APPEARANCES:

For Plaintiff Greenway Partners, L.P.:

    Wolf Haldenstein Adler Freeman & Herz LLP
    270 Madison Avenue
    New York, NY 10016
    By: David L. Wales, Esq.
        Daniel W. Krasner, Esq.
        Matthew M. Guiney, Esq.

For Defendants Luxottica Group, S.p.A., Shade Acquisition and Leonardo Del Vecchio:

    Winston & Strawn LLP
    200 Park Avenue
    New York, NY 10166
    By: Eric M. Nelson, Esq.
        Joseph A. DiBenedetto, Esq.

For Defendant James N. Hauslein:

    Proskauer Rose LLP
    1585 Broadway
    New York, NY 10036
    By: Stefanie S. Kraus, Esq.
        David M. Lederkramer, Esq.

For Defendants Sunglass Hut Directors:

    Orrick, Herrington & Sutcliffe LLP
    405 Howard Street
    San Francisco, CA 94105
    By: Michael D. Torpey, Esq.



Jack B. Weinstein, Senior United States District Judge:

This preliminary and tentative memorandum is issued prior to argument of a motion for partial summary judgment by defendants in order to assist the parties. No findings of fact or law are made.

In a takeover by tender it is claimed that the CEO-President of the target was given an extra payment of $15 million, in the form of a five-year consultation-noncompete contract, for supporting the takeover. The CEO-President owned about 4.3% of his company's stock. It is the contention of a class of former shareholders who tendered their stock that they should receive the same "premium" per share as the CEO-President received, a sum of several hundred million dollars, from the buyer. Authority appears to support that position. *See* 15 U.S.C. § 78n(d)(7) (section 14d(7) of the Williams Act); Regulation 14D, 17 C.F.R. § 240.14d-10 (SEC Rule 14d-10); *Gerber v. Computer Assocs. Int'l, Inc.*, 303 F.3d 126 (2d Cir. 2002); *Field v. Trump*, 850 F.2d 938 (2d Cir. 1988); *Gerber v. Computer Assocs. Int'l, Inc.*, No. 91 CV 3610, 2000 WL 307379 (E.D.N.Y. Mar. 14, 2000); *see also Epstein v. MCA, Inc.*, 54 F.3d 1422 (9th Cir. 1995); *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir. 1995).

The rule does appear to be harsh in some cases. *See, e.g.*, Ben Walther, *Employment Agreements and Tender Offers: Reforming the Problematic Treatment of Severance Plans Under Rule 14d-10*, 102 COLUM. L. REV. 774 (2002); John C. Coffee Jr., *Rule 14d-10: Can a Practical Solution be Found?*, N.Y.L.J., Nov. 18, 2004, at 5. Nevertheless, the motion of defendants to cap liability at the premium paid to the CEO-President—i.e., $15 million—appears, based on the present state of the record, to have no warrant. In view of the preliminary evidence suggesting a bald conspiracy between the buyer and the CEO-President to

pay the latter for his help in recommending acceptance of the tender (over some shareholder protest), there appears at the moment to be no equitable basis for departing from the law as written.

If this tentative view of the court is ultimately presented to the jury, the formula for recovery would appear to be as follows:

I. Present View of Court on Formula for Damages

$$\frac{\left(\begin{array}{l}\text{Total amount of} \\ \text{compensation agreed} \\ \text{to be paid to} \\ \text{CEO-President}\end{array} - \begin{array}{l}\text{Actual total estimated} \\ \text{value, at time of tender,} \\ \text{of services to be} \\ \text{rendered by} \\ \text{CEO-President}\end{array} - \begin{array}{l}\text{Offset for discount of present} \\ \text{money value at time of tender} \\ \text{of payment to CEO-President} \\ \text{to be made in future}\end{array}\right) \times \begin{array}{l}\text{Interest from tender} \\ \text{to time of judgment}\end{array}}{\text{Total shares tendered by CEO-President (\underline{not} total shares tendered by all shareholders)}} = \begin{array}{l}\text{Extra payment} \\ \text{for each share} \\ \text{tendered, to be} \\ \text{paid by buyer}\end{array}$$

4

Discovery has not been completed. A number of issues have not been briefed; they include the following:

1. <u>Legal Fees</u>: Who shall pay legal fees?

2. <u>Liability of Others</u>: Is there liability on the part of the banks, directors, or others and, if so, how shall that be computed and evaluated?

3. <u>Disgorgement</u>: Is disgorgement appropriate? How should it be computed? Does federal or state law apply and, if the latter, which state's law? Shall the buyer or the shareholders be given credit for the amount? The following suggests the possible formula for disgorgement:

II. <u>Present View of Court on Formula for Disgorgement, if any, by CEO-President</u>

$$\sum \begin{array}{l}\text{Amount of compensation to} \\ \text{CEO-President per payment,} \\ \text{less value of services received} \\ \text{for that period}\end{array} \times \begin{array}{l}\text{Interest to date of judgment} \\ \text{of each payment}\end{array} = \begin{array}{l}\text{Amount of disgorgement} \\ \text{by CEO-President}\end{array}$$

SO ORDERED.

s/Jack B. Weinstein
Jack B. Weinstein

Dated: May 12, 2005
Brooklyn, New York

5