IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ FEB 2 ⸱ 2006 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ) | **No. 01-CV-3285 (JBW)** |
| ) | |
| **IN RE: LUXOTTICA GROUP S.P.A.** ) | MEMORANDUM, ORDER |
| **SECURITIES LITIGATION** ) | AND JUDGMENT ON FINAL |
| ) | APPROVAL OF SETTLEMENT |
| ) | AND FEES |
| ) | |

Appearances:

For Plaintiffs:
      Wolf Haldenstein Adler Freeman & Herz LLP
      New York, New York
      By:    Matthew M. Guiney
             David Lloyd Wales

For Defendants Luxottica Group, S.p.A., Shade Acquisition Group and Leonardo DelVecchio:
      Winston & Strawn LLP
      New York, New York
      By:    Joseph A. DiBenedetto
             Anthony DiSarro
             Michael Joseph Friedman
             William A. Kapell
             Eric M. Nelson
             Philip M. Smith

For Defendant James N. Hauslein:
      Norman Kaplan                  Orrick, Herrington & Sutcliffe LLP
      Great Neck, New York        San Francisco, California
      By:    Gregg M. Mashberg     By:    Michael D. Torpey

      Proskauer Rose LLP           Winston & Strawn LLP
      New York, New York         New York, New York
      By:    Bruce E. Fader        By:    Joseph A. DiBenedetto
             David M. Lederkramer
             Matthew J. Morris
             Stefanie S. Kraus



For Defendants Rohit M. Desai, John H. Duerden, Robert C. Grayson, Michael McCadden, and William E. Phillips:

Orrick, Herrington & Sutcliffe LLP
San Francisco, California
By:    Kenneth P. Herzinger
        Stephen Michael Knaster
        Heidi E. Koh
        Michael D. Torpey

Winston & Strawn LLP
New York, New York
By:    Joseph A. DiBenedetto

## Table of Contents

I.    Facts ............................................................................................................... 3

II.    Law and Application of Law to Facts .......................................................... 6

    A.    Standard of Review ............................................................................ 8

    B.    Criteria for Approval ......................................................................... 9

        1.    Complexity, Expense and Likely Duration of Litigation ........... 10

        2.    Favorable Reaction of Class ..................................................... 11

        3.    Stage of Proceedings and Amount of Discovery Completed ..... 12

        4.    Risks of Establishing Liability .................................................. 13

        5.    Risks of Establishing Damages ................................................. 15

        6.    Risks of Maintaining Action Through Trial and Ability
            of Defendant to Withstand Greater Judgment .......................... 16

        7.    Reasonableness of Settlement in Light of Possible Recovery
            and Risks of Litigation ............................................................. 18

            i.    J. Mark Penny ............................................................. 18

            ii.    John C. Coffee, Jr. ...................................................... 19

            iii.    Paul A. Gompers .......................................................... 20

        8.    Arm's-Length Negotiation ......................................................... 21

9. Immediacy and Certainty of Recovery.......................................................22

C. Plan of Allocation...........................................................................................23

D. Fees and Expenses...........................................................................................24

III. Conclusion..............................................................................................................25

JACK B. WEINSTEIN, Senior District Judge:

This is a securities class action brought on behalf of all shareholders of Sunglass Hut International, Inc. who tendered their shares in response to a tender offer by Luxottica Group S.p.A. Plaintiffs' complaint centers on a non-competition agreement executed by Sunglass Hut's chief executive officer in alleged violation of the Williams Act, 15 U.S.C. §§78m(d), 78n(d), and other federal and state laws. The parties seek final approval of their proposed settlement.

The settlement is fair, reasonable and adequate. No class member has objected. No class member has opted out. The level of class participation in this case is exceptionally high. The settlement is approved. Based upon oral findings on the record, the allocation of attorney fees and expenses is approved.

## I. Facts

On February 22, 2001, in a takeover bid, defendant Luxottica Group S.p.A. ("Luxottica") announced a tender offer of $11.50 cash per share of stock in Sunglass Hut International, Inc. ("Sunglass Hut"). The tender offer commenced on March 5, 2001. 35 million shares—over 97 percent of those outstanding—were tendered.

The day before the takeover bid was announced, defendant James Hauslein, then the CEO of Sunglass Hut, had signed a Consulting, Nondisclosure and Noncompetition Agreement ("Agreement") with Luxottica. The Agreement provided that, in exchange for $15 million, Hauslein would not compete with his old company for five years and would provide, if asked, consulting services to the purchasers. To date, he has not performed any consulting services for the company.

Beginning May 22, 2001 several suits were filed by plaintiff shareholders against Luxottica, its CEO Leonardo Del Vecchio, and Sunglass Hut (collectively, "the Luxottica Defendants"); and Hauslein and other members of the Sunglass Hut board of directors (collectively, "the Sunglass Hut Defendants"), claiming violations of the Williams Act, Pub. Law No. 90-439, 82 Stat. 454 (1968) (Sections 13d and 14d of the Securities Exchange Act of 1934, codified as amended at 15 U.S.C. §§ 78m(d) and 78n(d)).

Plaintiffs claimed that the Agreement violated the Williams Act's best price rule, which requires that "all [share]holders must be paid the highest consideration offered under [a] tender offer." *Field v. Trump*, 850 F.2d 938, 942 (2d Cir. 1988). Plaintiffs alleged that the Agreement represented consideration over and above that given to other shareholders: Hauslein held about four percent of the outstanding shares of Sunglass Hut. Plaintiffs alleged that Luxottica offered Hauslein this excess consideration because his position as CEO and a dominating member of the board made his active participation and acquiescence in the negotiations critical.

Plaintiffs also filed claims under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibiting false or misleading statements in connection with the purchase of securities, and under Florida state fiduciary duty law. The Section 10(b) claim was dismissed on

4

November 26, 2003 on a Rule 12 motion. *See* Fed. R. Civ. P. 12.

Defendants contended that the Williams Act did not provide a private right of action; did not apply to the Agreement, because it had been entered into prior to the tender offer; and, in any event, limited the amount of damages available to the class to $15 million, the amount of the Agreement. They raised Florida's business judgment statute as a defense to the state breach of fiduciary duty claim.

This case has been actively litigated for almost five years. The parties have disputed the appointment of a lead plaintiff and lead counsel; motions to dismiss the first, first amended and second amended complaints; class certification; discovery (including lengthy interrogatories and numerous depositions); and motions for summary judgment. They have conducted extensive settlement negotiations. *See, e.g., In re Luxottica Group S.p.A. Securities Litigation*, 293 F. Supp. 2d 224 (E.D.N.Y. 2003) (granting in part and denying in part motion to dismiss claims); *In re Luxoticca Group S.p.A. Securities Litigation*, No. 01-CV-3285, 2004 WL 2370650 (E.D.N.Y. Oct. 22, 2004) (approving appointment of counsel but striking portions of retainer agreement as against public policy); Stip. & Order of Dec. 23, 2004 (certifying class on basis of Rule 23 issues resolved in October 22, 2004 order); *In re Luxottica Group S.p.A. Securities Litigation*, No. 01-CV-3285, 2005 WL 1140775 (E.D.N.Y. May 12, 2005) (appropriate measures of damages); Order of May 16, 2005 (approving withdrawal of class notice as to Sunglass Hut Defendants in light of proposed partial settlement); Order of Aug. 10, 2005 (preliminary approval of partial settlement with Sunglass Hut Defendants); Order of Sept. 2, 2005 (approving withdrawal of motion for summary judgment in light of proposed partial settlement with Luxottica Defendants).

There is no reason to believe that the settlement was the product of collusion. No potential future class members exist who could be harmed by the conciliation. *Cf. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) (approval of settlement improper where parties never intended to litigate and future class members were excluded from settlement fund).

By August 31, 2005 plaintiffs had reached partial settlement agreements with both the Sunglass Hut Defendants and the Luxottica Defendants. The combined settlements provide for the payment of $18.25 million for the benefit of the class. The plan of allocation provides that after the payment of fees and expenses, the net settlement amount will be distributed pro rata, based on the number of authorized shares that participate in the settlement. In consideration for these payments, class members will be deemed to have released all claims that were or could have been asserted against the defendants related to the tender offer. The terms of the settlements and the release were described in notices sent to members of the class.

## II.     Law and Application of Law to Facts

The Federal Rules of Civil Procedure require a court that has certified a class to approve any proposed settlement in that action. Rule 23(e) of the Rules provides:

> (e) Settlement, Voluntary Dismissal, or Compromise.
>
> > (1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.
> >
> > (B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed

settlement, voluntary dismissal, or compromise.

(C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(2) The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

(3) In an action previously certified as a class action under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(4)(A) Any class member may object to a proposed settlement, voluntary dismissal, or compromise that requires court approval under Rule 23(e)(1)(A).

(B) An objection made under Rule 23(e)(4)(A) may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e). Pursuant to this rule, adequate notice has been given to class members, informing them of the settlement and their rights to object.

An evidentiary hearing was held to consider the fairness of the settlement. No objection was made by any class member. The court received and fully considered adequate evidence on the reasonable value of the Agreement—the lynchpin of this litigation and the nucleus of any damages to which the class might be entitled.

## A. Standard of Review

"[T]he law favors settlements, of class actions no less than of other cases." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)). *See also In re Blech Sec. Litig.*, No. 94 CIV. 7696, 2000 WL 661680, at *1 (S.D.N.Y. May 19, 2000); *Adair v. Bristol Tech. Sys., Inc.*, No. 97 CIV. 5874, 1999 WL 1037878, at *1 (S.D.N.Y. Nov. 16, 1999). Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is "particularly true in class actions." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (citing *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). *See also Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The court must determine that the settlement is "fair, reasonable, and adequate" before it may approve it. Fed. R. Civ. P. 23(e)(1)(C); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990). Determination of the fairness of a settlement agreement is left to the sound discretion of the trial court. *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991). *See also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). In its exercise of that discretion, the court must engage in careful balancing. "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), abrogated on other grounds, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir.

2000).

> It is not necessary in order to determine whether an agreement of
> settlement and compromise shall be approved that the court try the
> case which is before it for settlement . . . Such procedure would
> emasculate the very purpose for which settlements are made. The
> court is only called upon to consider and weigh the nature of the
> claim, the possible defenses, the situation of the parties, and the
> exercise of business judgment in determining whether the proposed
> settlement is reasonable.

*Id.* (citing *Neuwirth v. Allen*, 338 F.2d 2 (2d Cir. 1964)). *See also Parker v. Anderson*, 667 F.2d

1204, 1209 (5th Cir. 1982) ("[T]he court does not adjudicate the dispute.") (quoting *Plummer v.*

*Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982).

## B.    Criteria for Approval

The factors to be considered by a district court in making a Rule 23(e) determination, as

summarized by the Court of Appeals for the Second Circuit are:

> (1) the complexity, expense and likely duration of the litigation; (2)
> the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks
> of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through trial; (7) the ability
> of the defendant to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible
> recovery;  and (9) the range of reasonableness of the settlement
> fund to a possible recovery in light of all the attendant risks of
> litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). *See also Blech*, 2000 WL 661680, at *3-4; *Adair*,

1999 WL 1037878, at *2. The facts and law strongly support a finding that the settlement is fair,

reasonable and adequate in all respects.

## 1. *Complexity, Expense and Likely Duration of Litigation*

The legal and factual complexity of this litigation, on both liability and damages, is reflected in the extensive briefing on the Luxottica Defendants' four separate motions for summary judgment. This litigation involved numerous difficult legal and financial issues typical in securities class actions, and legal issues related to the appropriate measure of damages under the Williams Act with respect to payments made to Hauslein. Compelling legal arguments were made by all parties on these issues.

Many of the aspects of this litigation were in dispute. Had this matter proceeded to trial, extensive evidence would have had to be presented through both fact and expert witnesses. The proof would have likely included a battle of experts, leaving the trier of fact with difficult questions to resolve. The experts retained in this action are noted for their knowledge in their fields and have published widely cited studies.

By the time the parties reached settlement, class counsel had conducted a lengthy and detailed investigation relating to the claims against all defendants alleged in the complaint and likely defenses. A substantial fact and expert discovery plan had been completed including review and analysis of approximately 60,000 pages of documents produced by the Sunglass Hut Defendants, the Luxottica Defendants, defendants' experts, and other third parties; more than twenty depositions, including all named defendants, third parties and experts; review and analysis of public documents, including all relevant filings made by Sunglass Hut and Luxottica with the SEC; extensive consultation with compensation, market, employment and valuation experts; months of negotiations among all parties' counsel, and numerous mediation sessions with two United States magistrate judges and one former United States circuit judge.

10

Pursuit of this action through pretrial stages has been costly. Numerous legal motions were briefed, including motions to dismiss, motions for interlocutory review, motions for summary judgment on state law claims prior to discovery, a motion for partial summary judgment on the measure of damages, and—after the completion of discovery—extensive motions for summary judgment. Discovery was extensive. Plaintiffs reviewed and analyzed voluminous document production and conducted depositions in New York, Florida, California, Massachusetts and Milan, Italy. Plaintiffs also worked with and were required to rely on experts to establish the legal and financial implications of the Agreement. A trial, post-trial motions and appeal would have been even more costly.

A trial would probably not have resulted in the conclusion of the action. Time-consuming post-trial motions and appeals were almost inevitable. The action could have gone on for many more years. Either no recovery for the class or substantial loss to defendants could have ultimately resulted.

### 2. *Favorable Reaction of Class*

The reaction of the class to a settlement is perhaps a significant factor to be weighed in considering its adequacy. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y 2001). Lack of objection is strong evidence of the settlement's fairness. *PaineWebber Ltd.*, 171 F.R.D. at 126. This settlement has been well received by the class: no member of the class has requested exclusion; no member of the class has objected to the settlement. Claim forms have been submitted for more than 28 million shares out of a class of approximately 35 million shares.

11

The claims administrator sent 11,354 notices to potential class members or their nominees. Potential class members were sent separate notices for each partial settlement.

The deadline to file objections to the partial settlement described in the first notice was September 22, 2005. Through the date of this memorandum and order, not a single objection to the settlement described in the first notice of partial settlement has been received. No potential class member has sought to be excluded from the first partial settlement. The deadline for class members to file objections to the second partial settlement described in the second notice was January 26, 2006. No objection to that partial settlement has been received. No class member has sought to be excluded. As already noted, claims have been submitted on behalf of 80 percent of the affected shares.

Favorable reaction of a class of sophisticated investors evidences fairness, reasonableness, and adequacy. *Am. Bank Note*, 127 F. Supp. 2d at 425 (settlement warrants approval where there were no objections and five shareholders sought exclusion). *See Grinnell*, 495 F.2d at 462; *Michael Milken*, 150 F.R.D. at 56 ("Another significant factor is the absence of any negative response of the members of the Class."). *See also Sala*, 721 F. Supp. at 83 ("reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002) (same). This factor strongly supports approval of the settlement.

### 3.    *Stage of Proceedings and Amount of Discovery Completed*

A court will consider the extent of discovery completed by counsel in order to ensure that plaintiffs have had access to sufficient material to evaluate their case and to assess the adequacy

of the settlement proposal in light of the strengths and weaknesses of their position. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213-14 (S.D.N.Y. 1992). Full discovery was completed by plaintiffs' counsel. Counsel investigated the facts and circumstances underlying plaintiffs' claims; reviewed and analyzed approximately 60,000 pages of documents produced by the Sunglass Hut Defendants, the Luxottica Defendants and third parties; conducted more than twenty depositions of defendants, third parties, and experts; reviewed and analyzed public documents, including all relevant filings made by Sunglass Hut and Luxottica with the SEC; consulted extensively with experts, produced expert reports and analyzed the expert reports produced by the Luxottica Defendants; and conducted multiple mediation sessions under judicial supervision.

Class counsel has "a clear view of the strengths and weaknesses of [the] case[]." *Warner*, 618 F. Supp. at 745. They are able to make an informed decision on the merits of the settlement. *See PaineWebber*, 171 F.R.D. at 126. This factor supports approval of the settlement.

### 4.     *Risks of Establishing Liability*

Securities class actions generally involve complex issues of fact and law. This action is no exception. Plaintiffs had to prove that Luxottica offered and paid greater consideration to Hauslein for his shares than to other tendering Sunglass Hut shareholders in violation of the best price rule of the Williams Act; that Hauslein breached his fiduciary duty in receiving the extra payments from Luxottica while negotiating the terms of the tender offer; and that the outside director defendants breached their fiduciary duties by agreeing to Hauslein's acceptance of the payments. All defendants vigorously denied the claims asserted against them.

13

Plaintiffs faced substantial difficulties in proving the contested factual allegations. The defendants denied the factual allegations and asserted that 1) the Agreement that Luxottica executed with Hauslein was fair and reasonable; 2) the payments to Hauslein were in consideration for his covenant not to compete and served to protect Luxottica's investment in purchasing Sunglass Hut, and Hauslein's execution of such a covenant was a condition precedent to its acquisition of Sunglass Hut; 3) the tender offer price was fair and reasonable to Sunglass Hut shareholders, was the maximum price Luxottica was willing to pay; included a 119% premium over the market price immediately preceding news reports of the potential acquisition; and Sunglass Hut would not have been able to improve upon that offer; 4) Sunglass Hut negotiated the terms of the tender offer with Luxottica at arms' length in an effective and rigorous manner with the full input of independent expert advisers; 5) the Luxottica Defendants did not receive any improper profit or other advantage in connection with the agreement with Hauslein or the tender offer; 6) the Sunglass Hut board of directors approved the tender offer terms only after careful consideration and deliberation and with the shareholders' best interests in mind; and 7) Hauslein's Sunglass Hut shareholdings had no bearing on the outcome of any acquisition, and Hauslein did not request or receive any extra consideration for the tender of his shares in response to the tender offer.

At the time the proposed settlement was reached with the Luxottica Defendants, their motions for summary judgment were pending. Given conflicting testimony and evidence, the result of a jury trial would have been unpredictable. The jury could have accepted the renowned defense experts' testimony. They would have been strong witnesses.

Defendants aggressively defended the case on legal grounds as well, arguing that there was no longer a private right of action under the Williams Act and that, since the Agreement was entered prior to the formal commencement of the tender offer, the Williams Act did not apply. Either of these arguments, if successful, would have been a complete defense to the Williams Act claim.

Defendants would have pursued these and other legal issues in post-trial motions and on appeal. The risks of establishing liability and collecting a judgment were substantial. This factor supports approval of the settlement.

### 5. *Risks of Establishing Damages*

There were substantial barriers to establishing damages. Defendants vigorously disputed plaintiffs' factual contentions. They asserted that the payments to Hauslein were not for his shares, but were in fact for his agreement not to compete. Defendants further contended that $15 million was the proper market value of Hauslein's Agreement. The Luxottica Defendants' well-known expert, Professor Paul A. Gompers of Harvard, challenged plaintiffs' expert report, and opined that making several "corrections" would result in no damages under plaintiffs' expert's theory. *See infra*, II.B.7. The damage assessments of plaintiffs' and defendant's experts who would be called at trial varied substantially, thus precipitating a "battle of the experts." In such a battle, the jury could have been swayed by defendants' experts, finding that the plaintiffs were entitled to little or no recovery even if liability were established. *See, e.g., PaineWebber*, 171 F.R.D. at 129 (noting the unpredictability of the outcome of a battle of damage experts).

Even if plaintiffs had succeeded in establishing defendants' liability, a substantial dispute on the measure of damages would have remained. Luxottica repeatedly asserted that damages—if there were any damages at all—were capped at the value of the payments to Hauslein. Over the course of the litigation, Luxottica consistently disputed that it would have paid higher than the tender price of $11.50 per share, and specifically denied that it was prepared to pay $12 per share. The settlement surpasses this mark, with a recovery of more than $.50 per share. This factor supports approval of the settlement.

### 6. Risks of Maintaining Action Through Trial and Ability of Defendant to Withstand Greater Judgment

The ability to maintain the class action through trial was not a substantial risk in this litigation. Defendants raised issues about the adequacy of class representative Greenway Partners, including whether its interests were aligned with those of the class and whether it would act in the best interests of the class during settlement negotiations. Each of these arguments was advanced in the context of previous counsel's conflict of interests and Greenway's motion to retain present counsel as lead counsel for the class. Defendants entered into a stipulation and proposed order, which this court approved, granting class certification. Defendants reserved the right to later seek to decertify the class. They could have sought before trial, in post-trial motions, or on appeal to decertify the class by renewing its objections to Greenway's adequacy as class representative. Post-trial motions and appeals—even dubious ones—are a potential risk in any litigation. *See, e.g., Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment *non obstante veredicto* was denied, but on appeal the

judgment was reversed and the case dismissed); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215

(10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Ward v.*

*Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for

securities fraud); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)

("It is known from past experience that no matter how confident one may be of the outcome of

litigation, such confidence is often misplaced."); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603

F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v.*

*Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409

U.S. 363 (1973) (overturning $145 million judgment after modification on appeal).

Greenway was a completely adequate lead plaintiff and class representative. It devoted

considerable effort to the prosecution of the class claims. It produced a substantial number of

documents for use in the litigation. Alfred Kingsley, the general partner of Greenway, was

deposed for a full day, attended several court hearings and mediation sessions, reviewed and

commented on all substantial filings, and pushed for a large recovery. Greenway negotiated a fee

schedule with class counsel that was extremely beneficial for the class and an attorney fee award

that is substantially below the norm and the collective lodestar of the law firms who worked on

the case. Greenway is a sophisticated institutional investor that acted in the best interest of the

class and helped achieve a substantial recovery for the class.

Luxottica is a multi-billion corporation. It might have withstood a greater judgment.

These factors weigh neither for nor against approval.

7. *Reasonableness of Settlement Fund in Light of Possible Recovery and Risks of Litigation*

The potential recovery on the Williams Act claim was between several dollars per share and zero. The court received three expert reports that estimated the value of the Agreement.

i. J. Mark Penny

The report of plaintiffs' expert J. Mark Penny, Accredited Senior Appraiser, is based largely on conversations between an analyst at Arthur Anderson LLP and Hauslein on April 12 and May 11, 2001. These responses antedate the filing of the complaints in this case, but Hauslein likely knew that litigation was impending. If so, he had reason to inflate the apparent importance of the Agreement by exaggerating his intent and ability to compete with the Sunglass Hut absent the Agreement. Mr. Penny, as plaintiff's witness, had reason to deflate the value of the Agreement so as to increase the alleged "share premium" received by Hauslein in violation of the best price rule.

Mr. Penny considered three possible approaches to valuing an asset—cost approach (the expense involved in developing the asset), market approach (comparisons with sales of similar assets) and income approach (anticipated economic benefits of the asset). He selected the income approach because there were no comparable transactions available and he believed that the Agreement's value was best measured by the difference it would make to Sunglass Hut's income.

The expert considered Hauslein's business expertise, intent to compete, resources, relationship with customers and other businesses, age and health; the potential damage to the

18

buyer from his competition; the Agreement's duration, geographic scope, and enforceability; the energy with which the Agreement was negotiated; and the effect of breach on payments made under the Agreement.

Mr. Penny concluded that the value of the Agreement to the purchasers was between $6.3 and $7 million. He calculated the original value of the five annual $3 million payments to be $12.23 million.


ii.     John C. Coffee, Jr.

The report of defendants' expert John C. Coffee, Jr., Adolf A. Berle Professor of Law at Columbia Law School, analyzed the severance agreement as a whole and concluded that it was reasonable. It paid special attention to the Agreement and concluded that its value approximated the value of the payments to be made.

Professor Coffee reasoned: 1) The goal of the purchasers was to prevent Hauslein from competing with them by paying him to sign the Agreement. 2) The incentive to adhere to the Agreement would need to be equal, at least, to the incentive to breach. 3) As $3 million a year more or less equaled the top going rate for a CEO in the industry at the time, the Agreement—which provided for five annual payments of $3 million each—accurately reflected the cost to Hauslein of not competing.

Under this view, discounted to original value, the value of the Agreement to Hauslein was about $12.5 million. This approximates the present value of the five annual $3 million payments—according to defense calculations, $12.7 to $13.1 million.

### iii.    Paul A. Gompers

The report of defendants' expert Paul A. Gompers, Roy and Elizabeth Simmons Professor of Business Administration at Harvard Business School, was prepared in rebuttal to the plaintiffs' expert reports. As to Mr. Penny's valuation, Professor Gompers argues that Mr. Penny failed to consider the value of the Agreement to Luxottica as a whole—not only the Sunglass Hut—or the value of Hauslein's consulting services, which were included as terms of the Agreement. Hauslein was to receive the $3 million annual payments whether or not he performed any consulting services. Professor Gompers also notes that Mr. Penny's report calculated the after-tax, rather than pre-tax, value of the Agreement.

After correcting for these and other alleged errors, Professor Gompers concluded that, under a proper view of Mr. Penny's model, the actual, pre-tax value of the Agreement was $12.5 million. This approximated the present value of the five annual $3 million payments—$12.7 to $13.1 million, according to defense calculations.

As for the state law claims, plaintiffs sought to recover the difference between the market value of Hauslein's agreement and the payments to be made to him—which would represent the harm suffered by the corporation by paying in excess for services rendered. The Luxottica Defendants sharply disputed the factual and legal basis for this claim and have repeatedly moved to dismiss it. The settlement with the Sunglass Hut Defendants recovers a substantial portion of the present value of the payments, especially when combined with the adjustments defendants' experts assert are necessary. The maximum possible recovery on the state claim was much smaller than that on the federal claim.

In light of the experts' reports, the largest probable recovery, and the risks of further litigation, the settlement is adequate. This factor supports approval of the settlement.

### 8. Arm's-Length Negotiation

Courts have examined the "negotiating process by which the settlement was reached." *Weinberger*, 698 F.2d at 74. They have focused on whether the settlement was achieved through "arm's length negotiations" by counsel who has "the experience and ability . . . necessary to effective representation of the class's interests." *Id.* An assumption of correctness attaches to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See, e.g., Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980), *aff'd*, 647 F.2d 163 (2d Cir. 1981). *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989).

The settlement was the product of tough, arm's-length negotiation. The settling parties started discussing settlement in mid-2004 and continued irregularly through the summer of 2005. After a number of mediation sessions under the supervision of two federal magistrate judges and a former federal circuit judge, the parties reached two partial settlements. The parties carried out discovery, prepared for trial and filed numerous dispositive motions during these months. The settlement was the product of extensive arm's-length negotiations, with the assistance of competent mediators. *See, e.g., Union Carbide*, 718 F. Supp. at 1103. This factor supports approval of the settlement.

21

### 9. *Immediacy and Certainty of Recovery*

The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate. Courts consistently have held that "[t]he expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984) (citing *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979)). The present settlement, achieved after years of active litigation, must be balanced against the expense and delay necessary to achieve a potentially larger result after trial and appeals.

Approval of the proposed settlement will mean a guaranteed recovery for class members. If not for the settlement, the case would have continued to be fiercely contested. Defendants have demonstrated a commitment to defend the case through and beyond trial, if necessary. A trial would have occupied several attorneys for all parties for weeks, and would have required substantial expert testimony on both sides. A judgment favorable to plaintiffs would inevitably have been the subject of post-trial motions and appeal, which would have further prolonged the case. *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 324 (E.D.N.Y. 1993). "[V]ictory—even at the trial stage—is not a guarantee of ultimate success." *Michael Milken*, 150 F.R.D. at 53. Delay at the trial stage and through post-trial motions and the appellate process might have forced class members to wait years longer for any recovery. This would have increased the amount of fees payable to plaintiffs' counsel and reduced the value of any award to the class. Settlement of this action before significant additional resources have been expended benefits the class. Class members will receive compensation now rather than rely on an uncertain recovery of an

22

unknown sum—not likely to be much larger than the proposed settlement amount—at some point in the future.

The essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *United States v. N. Y. City Bd. of Educ.*, 85 F. Supp. 2d 130, 157 (E.D.N.Y. 2000) (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972). Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory. *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (citing *United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S. Ct. 1752, 1757 (1971); *McDonald v. Chicago Milwaukee Corp.*, 565 F.2d 416, 429 (7th Cir. 1977); and *United States v. Jackson*, 519 F.2d 1147, 1152 (5th Cir. 1975)). The fact that the class potentially could have achieved a greater recovery at trial is not dispositive and does not preclude the court from finding that the settlement is within a "range of reasonableness" that is appropriate for approval. The settlement was the product of extensive arm's-length negotiation, using venerable mediators, and provides for a substantial recovery in an action with sharply contested merits and damages. This factor supports the settlement.

### C.      Plan of Allocation

The allocation of the settlement must also be fair and reasonable. *In re Sterling Foster & Co., Inc., Sec. Litig.*, 238 F. Supp. 2d 480, 486 (E.D.N.Y. 2002) (citing *PaineWebber*, 171 F.R.D. at 133). The purpose of developing a plan of allocation is to devise a method that permits the equitable distribution of limited settlement proceeds to eligible class members. *Beecher v Able*,

575 F.2d 1010, 1016 (2d Cir. 1978). A plan of allocation should be based on the nature and extent of class members' provable damages. *See Gulf Oil/Cities*, 142 F.R.D. at 595-96.

In a typical securities class action, class members' damages may vary based on purchases made at differing prices and differing dates in reliance on specific disclosures and movements in the price of a stock. This settlement does not present that problem. The recovery in the proposed settlement is for additional compensation that should have been paid to all tendering shareholders in equal proportions on a single date.

The allocation plan set forth in the stipulations requires any member of the class to submit a valid proof of claim before he is entitled to receive any proceeds from the settlement fund. Each share is entitled to an equal portion of the recovery. After fees and expenses, the settlement fund will be distributed pro rata based on the number of shares participating in the settlement.

The proposed plan of allocation treats each tendering shareholder equally. It was adequately explained in the notices to class members. It tracks the theory of damages asserted by plaintiffs. It is reasonable and fair to the class.

### D.     Fees and Expenses

Class action fees in the Second Circuit are generally charged on a lodestar basis of time multiplied by hourly rates. *See Grinnell*, 495 F.2d at 471 ("[T]he easiest way for the court to compute value is to multiply the number of hours that each lawyer worked on the case by the hourly amount to which attorneys of like skill in the area would typically be entitled for a given

type of work on the basis of an hourly rate of compensation."). A multiplier for the riskiest litigation may also be available. *Id.* at 471-73. *But see Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[B]oth the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases."). Here, fees are below those calculated using the lodestar method. *See* Pl.'s Mem. on Fees 8 (counsel expended more than 8,304 hours for an aggregate lodestar of $3,336,809); *Id.* at 5 (counsel requests 12 percent fee totaling $2,181,250 plus interest). They are supported by contemporaneous records.

The fees are reasonable. The hours spent on the case were required. They are charged at customary rates for lawyers and other personnel of the experience and skill of those in this litigation. When appropriate, work was assigned to junior partners, associates and paraprofessionals to limit costs.

Expenses charged are supported by proper records. They are appropriate and to be expected. They were actually advanced on the class's behalf.

Fee and expense divisions among the plaintiff law firms that participated are appropriate. The fee splits are based on a pro rata share of time and hourly rates; the expenses are apportioned by actual costs advanced.

The fees of $2,181,250 and expenses of $296,818.82 agreed upon are approved.

## III.    Conclusion

Based upon the materials before the court and many hearings, the settlement is reasonable. It is approved. The case is marked closed as settled. It is dismissed on the merits.

Should the settlement not be consummated a motion to reopen the case may be made

The allocation of attorney fees and expenses is approved.

The parties may apply to the court should any problems arise during distribution or thereafter.

SO ORDERED

Jack B Weinstein

Dated: February 17, 2006
Brooklyn, New York

ATTEST
DATED 2/17 2006
ROBERT C. HEINEMANN
................................
BY _____ P. _____ CLERK